Franklin J. Rooks, Jr., Esquire
PA Attorney ID: 309562
***Morgan Rooks, P.C.***
525 Route 73 North, Suite 104
Marlton, NJ, 08053
Telephone No. (856) 874-8999
Facsimile No. (856) 494-1707
Email: fjrooks@morganrooks.com
Attorney for Plaintiff

| | | |
|---|---|---|
| **BETTYANNE MATASE** | : | **UNITED STATES DISTRICT COURT** |
| | : | **FOR THE EASTERN DISTRICT OF** |
| *Plaintiff,* | : | **PENNSYLVANIA** |
| | : | |
| **v.** | : | **DOCKET NO.** |
| | : | |
| | : | **CIVIL ACTION** |
| **HOLY FAMILY UNIVERSITY** | : | |
| | : | **JURY TRIAL DEMANDED** |
| *Defendant.* | : | |
| | : | **COMPLAINT** |

## PRELIMINARY STATEMENT

Bettyanne Matase ("Plaintiff") by and through her counsel, Franklin J. Rooks Jr., Esquire, of Morgan Rooks P.C., brings this lawsuit against Holy Family University seeking all available relief under the Title IX for the retaliatory termination of her employment.

## JURISDICTION

1. This civil controversy arises under the laws of the United States and jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331.

## VENUE

2. All actions complained of herein took place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

3. Venue is proper in the judicial District as provided by 28 U.S.C. §1391(b).

## PARTIES

4.      Plaintiff is an adult female who currently resides in Philadelphia, Pennsylvania.

5.      Holy Family University ("Defendant") is a is a is a private Roman Catholic university which is located in Philadelphia, Pennsylvania.

## FACTUAL BACKGROUND

6.      At all times relevant to this action, Defendant was a recipient of federal funds under Title IV of the Higher Education Act of 1965.

7.      Plaintiff began her employment with Defendant in July 2006.

8.      Plaintiff possesses a doctoral degree in nursing.

9.      Plaintiff is licensed as a nurse by the Commonwealth of Pennsylvania.

10.     Defendant employed Plaintiff on a full-time basis as an Assistant Professor in its nursing program.

11.     During the fall semester of 2019, Plaintiff taught a class which was attended by Marni Segal, a student enrolled in Defendant's nursing program.

12.     Ms. Segal struggled with her coursework and subsequently requested additional help with the instruction from Plaintiff.

13.     Ms. Segal was a non-traditional student who was approximately 40 years old at the time.

14.     When enrolled in Plaintiff 's class, Ms. Segal was a senior.

15.     Ms. Segal frequently requested additional instruction from Plaintiff due to a claimed difficulty with the material taught.

16.     After Ms. Segal graduated from Defendant's nursing program in January of 2020, she took her state nursing board examination and became a registered nurse.

17.   Subsequently, after graduating and receiving her professional nursing license, Ms. Segal reached out to Plaintiff on a personal level.

18.   Plaintiff and Ms. Segal became acquainted on a social level after Ms. Segal graduated from Defendant's nursing program.

19.   Defendant has a policy regarding faculty relationships with graduate or professional students which states that "[n]o Employee shall have or pursue a Relationship with Graduate or Professional Students whom the Employee is responsible for teaching, advising, grading, evaluating, or otherwise supervising."[1]

20.   After graduating with her Bachelor's degree in nursing, Ms. Segal enrolled in Defendant's master's degree level nursing program.

21.    Plaintiff did not teach any of the courses in which Ms. Segal was enrolled for the master's degree program.

22.   Ms. Segal began sending 40 (forty) or more text messages per day to Plaintiff.

23.   Ms. Segal made numerous posts to Plaintiff's social media accounts.

24.   Ms. Segal told Plaintiff that she suffered from psychological issues and was receiving treatment from a psychologist.

25.   Plaintiff believed that Ms. Segal was stalking her and told Ms. Segal to stop contacting her.

26.   Plaintiff attempted to limit the interaction that she had with Ms. Segal by blocking Ms. Segal from her social media accounts.

27.   Plaintiff blocked Ms. Segal's telephone number so that she could not receive telephone calls or text messages from her.

---

[1] https://www.holyfamily.edu/about/administrative-services/university-policies/human-resources-policies/non-fraternizationconsensual-relationship

28.  Ms. Segal's stalking of Plaintiff intensified and increased after Plaintiff blocked her on social media and from contacting her via the telephone.

29.  Ms. Segal followed Plaintiff. When Plaintiff was in the community or shopping, she repeatedly encountered Ms. Segal, who was present at the same places and same time as Plaintiff.

30.  On Defendant's campus, Ms. Segal followed Plaintiff by repeatedly being in the same area as Plaintiff and walking by Plaintiff's office.

31.  In February 2022, Plaintiff made a complaint concerning Ms. Segal's stalking behavior to Margaret Kelly-Harkins, the Dean of Defendant's School of Nursing and Health Sciences.

32.  Dr. Kelly-Harkins forwarded Plaintiff's complaint to Defendant's Security Department and suggested that Plaintiff file a Title IX complaint.

33.  Defendant's Security Department suggested that Plaintiff file a police report.

34.  On February 17, 2022, Plaintiff contacted Maryanne Price, Dean of Students and Defendant's Title IX Coordinator, to file a Title IX complaint.

35.  Plaintiff subsequently filed a police report with the Philadelphia Police Department's 8th District, as she was instructed by Defendant's Security Department.

36.  Plaintiff requested that her on-campus office be relocated for her personal safety.

37.  Ms. Segal continued to contact Plaintiff via email and by leaving gifts at her on-campus office.

38.  On February 26, 2022, Plaintiff met with April Washington, Defendant's Director of Equity & Inclusion within its Title IX Department.

39. Ms. Washington conducted a brief interview of Plaintiff concerning her complaints.

40. Defendant's Title IX Office failed to conduct any subsequent interviews of Plaintiff after the brief interview on February 26, 2022 with Ms. Washington.

41. In March of 2022, Plaintiff contacted Ms. Washington to discuss the status of her Title IX complaint but it was reported that there were no developments at that time.

42. On May 10, 2022, Ms. Price, Defendant's Title IX Coordinator, sent an email to Plaintiff and notified her that a resolution had been reached with her complaint and that Defendant's Title IX Office concluded its investigation.

43. Ms. Price's correspondence did not include any further details concerning Plaintiff's Title IX allegations.

44. Defendant dismissed Plaintiff's Title IX allegations without providing Plaintiff with any reasons for the dismissal.

45. Defendant failed to investigate Plaintiff's Title IX allegations.

46. Defendant failed to provide Plaintiff with written notice of any investigative interviews that it conducted in connection with Plaintiff's Title IX complaint.

47. Defendant failed to provide Plaintiff with an investigative report that summarized relevant evidence that was directly related to her allegations under her Title IX complaint.

48. On May 10, 2022, Plaintiff received a letter from Rochelle Robbins, Ed.D., Defendant's Interim Vice President of Academic Affairs.

49. Dr. Robbins' letter stated, in pertinent part, that Plaintiff violated Defendant's code of conduct for "over familiarity with a student."

50.    Dr. Robbins' letter alleged that Plaintiff engaged in conduct which violated the Family Education Rights and Privacy Act ("FERPA") which was "knowing and/or reckless."

51.    Dr. Robbins' letter also informed Plaintiff that she intended to recommend the termination of Plaintiff's employment.

52.    Defendant's Title IX policy states that "[S]exual Harassment, as an umbrella category, includes the offenses of sexual harassment, sexual assault, domestic violence, dating violence, and stalking…"[2]

53.    Defendant's Title IX policy defines "stalking" as "[e]ngaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for their safety or the safety of others or suffer substantial emotional distress.[3]

54.    Defendant's Title IX policy states that "[a]ny person may report violations of the nondiscrimination policy, including sexual harassment, in person, by mail, by telephone, or by electronic mail, using the contact information listed for the Title IX Coordinator, or by any other means that results in the Title IX Coordinator receiving the person's verbal or written report."[4]

55.    On August 22, 2022, Defendant terminated Plaintiff's employment.

## TITLE IX

56.    "Title IX proscribes discrimination based on sex in the provision of educational programs funded by or with the assistance of the federal government."  20 U.S.C. § 1681(a).

---

[2] https://www.holyfamily.edu/current-students/title-ix/prohibited-conduct
[3] *Id.*
[4] https://www.holyfamily.edu/about/administrative-services/human-resources/nondiscrimination-statement

57.    "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

58.    Title IX's ban on 'discrimination' encompasses bans on sexual harassment and retaliation, and that private rights of action are implied for both forms of discrimination under the statute." *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75-76 (1992).

59.    Title IX's prohibition of sex discrimination applies not only to students, but also to "[e]mployees who directly participate in federal programs or who directly benefit from federal grants, loans or contracts," thereby broadening the scope of Title IX to include employment discrimination. *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 520 (1982).

60.    Under Title IX, the definition of "sexual harassment" includes "stalking." 34 C.F.R. § 106.30.

61.    The term ''stalking'' means engaging in a course of conduct directed at a specific person that would cause a reasonable person to— (A) fear for his or her safety or the safety of others; or (B) suffer substantial emotional distress. 34 U.S.C. § 12291(a)(30).

## <u>COUNT I</u>

## <u>DELIBERATE INDIFFERENCE TO PLAINTIFF'S TITLE IX RIGHTS</u>

62.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

63.    At all times relevant to this action, Defendant was a recipient of Federal funding.

64. Plaintiff was subjected to stalking behavior by Ms. Segal, a student enrolled in Defendant's graduate nursing program.

65. Plaintiff contacted Defendant's Title IX Office to report on-campus and off stalking behavior that was perpetrated by Ms. Segal.

66. Plaintiff spoke to the appropriate person at Defendant's Title IX Office when she made her complaints concerning Ms. Segal's stalking.

67. Ms. Segal stalked Plaintiff because of Plaintiff's sex.

68. Defendant had substantial control over Ms. Segal because she was enrolled in Defendant's graduate nursing program.

69. Defendant had substantial control over Ms. Segal because took classes on Defendant's physical campus.

70. Ms. Segal engaged in stalking behavior against Plaintiff while on Defendant's campus.

71.  Defendant was aware that Ms. Segal engaged in stalking behavior against Plaintiff while on Defendant's campus.

72. Ms. Segal's stalking of Plaintiff was severe and pervasive and continued after Plaintiff filed her complaint with Defendant's Title IX Office.

73. Defendant failed to investigate Plaintiff's Title IX Complaint.

74. Ms. Segal completed her graduate education in Defendant's masters-level nursing program in May, 2022.

75. Defendant made an official decision to not remedy the complaint that Plaintiff made to its Title IX Office.

76.     Defendant formally communicated its decision to that it concluded its investigation and failed to provide Plaintiff with any details concerning the conclusion that it reached.

77.     Defendant failed to take any action against Ms. Segal in response to Plaintiff's Title IX complaint.

78.     After Plaintiff complained to Defendant's Title IX Office, Defendant terminated Plaintiff's employment.

79.     Plaintiff suffered damages as a consequence of Defendant's deliberate indifference to her complaints concerning Ms. Segal's stalking of her.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendant, in the form of compensatory damages, back-pay, front-pay, liquidated damages, punitive damages, attorneys' fees and costs, and all other available damages under Title IX to the fullest extent permitted by law, as well as any other relief the Court may deem just and equitable.

## COUNT II

## RETALIATION UNDER RIGHTS

80.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

81.     To establish a prima facie case of retaliation under Title IX, an employee must show 1) that she engaged in protected activity; 2) that she suffered an adverse employment action; and 3) there was a causal connection between the two. *Doe v Manor Coll.*, 479 F.Supp 3d 151, 169 (E.D. Pa. 2020).

82.     "Protected activity," as an element of a claim of retaliation under Title IX, extends beyond formal complaints and "includes informal protests of discriminatory practices, making complaints to management or administration, writing critical

letters, protesting against discrimination and the like." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).

83.   Plaintiff made a complaint to Defendant's Title IX Office concerning Ms. Segal's stalking of her.

84.   After Plaintiff made a complaint to Defendant's Title IX Office, Defendant began investigating Plaintiff.

85.   After Plaintiff made a complaint to Defendant's Title IX Office, Defendant accused Plaintiff of violating FERPA, without any basis in law or fact for making such claim.

86.   After Plaintiff made a complaint to Defendant's Title IX Office, Defendant accused Plaintiff of violating its "*Fraternization/Consensual Relationship Policy*."

87.   In pertinent part, under the heading, "*Relationships with Graduate or Professional Students*," Defendant's "*Fraternization/Consensual Relationship Policy*" states that "No Employee shall have or pursue a Relationship with Graduate or Professional Students whom the Employee is responsible for teaching, advising, grading, evaluating, or otherwise supervising."

88.   Plaintiff's Title IX complaint concerned Ms. Segal's actions that occurred after she graduated from Defendant's nursing program with a Bachelor's degree.

89.   At all relevant times to this action, Ms. Segal was a graduate student in Defendant's nursing program.

90.   At all relevant times to this action, Ms. Segal was a registered nurse.

91.   At all relevant times to this action, Plaintiff was a registered nurse.

92.     At all relevant times to this action, Plaintiff was not responsible for teaching, advising, grading, evaluating, or otherwise supervising Ms. Segal.

93.     There is nothing in Defendant's policies which prohibits professional relationships between two registered nurses.

94.     There is nothing in Defendant's policies which prohibits relationships between Defendant's faculty members and Defendant's graduate students.

95.     At all relevant times to this action, Plaintiff was not in violation of Defendant's "*Fraternization/Consensual Relationship Policy*."

96.     At all relevant times to this action, Plaintiff was not in violation of FERPA.

97.     Defendant retaliated against Plaintiff by failing to act on the complaints that she made to its Title IX Office.

98.     Defendant retaliated against Plaintiff by investigating Plaintiff instead of investigating Ms. Segal.

99.     Defendant's investigation of Plaintiff was a direct result of the complaint that she made to Defendant's Title IX Office.

100.     Defendant retaliated against Plaintiff by failing to follow the process mandated by the Title IX implementing regulations.

101.     Defendant retaliated against Plaintiff by failing to follow its own Title IX policies and procedures.

102.     Defendant retaliated against Plaintiff by terminating her employment.

103.     Plaintiff suffered damages as a consequence of Defendant's retaliation against her after she made a complaint to Defendant's Title IX office.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendant, in the form of compensatory damages, back-pay, front-pay, liquidated damages, punitive damages, attorneys' fees and costs, and all other available damages under Title IX to the fullest extent permitted by law, as well as any other relief the Court may deem just and equitable.

**Morgan Rooks, P.C.**

/s/ <u>Franklin J. Rooks, Jr.</u>
Franklin J. Rooks, Jr., Esquire
PA Attorney ID: 309562
525 Route 73 North, Suite 104
Marlton, NJ, 08053
Telephone No. (856) 874-8999
Facsimile No. (856) 494-1707
Email: fjrooks@morganrooks.com